IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA
CIVIL CASE NO. 25-CV-432

| | |
|---|---|
| STANLEY SOMERVILLE and MICHAEL GENWRIGHT, on behalf of themselves and all others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>QUALITY OIL COMPANY, LLC and RELIABLE TANK LINE, LLC,<br><br>Defendants. | **NOTICE OF REMOVAL** |

Pursuant to 28 U.S.C. § 1446, Defendants Quality Oil Company, LLC and Reliable Tank Line, LLC hereby remove the civil action captioned *Somerville & Genwright v. Quality Oil Company, LLC, & Reliable Tank Line, LLC*, No. 25 CVS 2466, from the North Carolina General Court of Justice, Superior Court Division, Forsyth County (the "State Court Action") to the United States District Court for the Middle District of North Carolina. The United States District Court has subject matter jurisdiction under 28 U.S.C. § 1332(d). As grounds for removal, Defendants show the Court the following:

## INTRODUCTION

Defendants plan to vigorously defend this case, including opposing the certification of this matter as a class action and proving that plaintiffs have not suffered any damages. But for the limited purpose of this Notice of Removal, Defendants have cited and referenced some of Plaintiffs' allegations merely because they demonstrate that this case meets the jurisdictional requirements for litigating in federal court pursuant to the Class

Action Fairness Act of 2005 ("CAFA"), 28 U.S.C. § 1332(d). By so doing, Defendants in no way concede that there is any merit whatsoever to Plaintiffs' allegations, do not concede any wrongdoing or liability, and look forward to their day in court.

## BACKGROUND

1. On or about April 16, 2025, Plaintiffs filed the State Court Action against Defendants in the North Carolina General Court of Justice, Superior Court Division, Forsyth County. (*See generally* Compl., Ex. 1.)

2. The Complaint and Summons were served on Defendants on April 30, 2024, by the Forsyth County Sheriff's Office.

3. In their Complaint, Plaintiffs generally allege that Defendants have shipped non-conforming fuel to its stations in North Carolina. (Compl. ¶ 1, Ex. 1.) Based on this alleged conduct, Plaintiffs allege claims for: (1) unfair and deceptive trade practices under N.C. Gen. Stat. § 75-1.1, (*id.* at ¶¶ 110–25); (2) negligent misrepresentation, (*id.* at ¶¶ 126–35); (3) breach of implied warranty of merchantability under N.C. Gen. Stat. § 25-2-314, (*id.* at ¶¶ 136–42); (4) unjust enrichment, (*id.* at ¶¶ 143–52); (5) negligence per se, (*id.* at ¶¶ 153–64); and (6) civil conspiracy, (*id.* at ¶¶ 165–73).

4. Plaintiffs purport to assert a class action on behalf of everyone who purchased non-conforming fuel sold by Quality Oil and/or distributed by Reliable Tank Line at a North Carolina fuel station during the four-year period prior to the filing of the Complaint through the present. (*Id.* at ¶ 100.)

## **CITIZENSHIP OF THE PARTIES**

5. Plaintiffs Somerville and Genwright allege they are citizens of North Carolina. (*Id.* at ¶¶ 10–11.)

6. Because Plaintiffs' purported putative class broadly includes anyone who purchased allegedly non-conforming "fuel sold by Quality Oil and/or distributed by Reliable Tank Line at a fuel station located in North Carolina[,]" regardless of their citizenship, the putative class as alleged necessarily includes citizens of many other states in addition to North Carolina citizens.

7. For instance, many of the 133 Quality Mart, Quality Plus, and GoGas fuel stations Defendants operate and supply in North Carolina are near interstate highways, major metropolitan areas, the state border, airports, tourist destinations, colleges and universities, and/or military bases. (*See* McIver Decl. ¶ 6, Ex. 2.)

8. More specifically, twenty-eight of Defendants' stations are located within 1.5 miles of Highway 17, Interstate 26, Interstate 40, Highway 52, Interstate 74, Interstate 77, or Interstate 85. *See* Quality Oil, *Locations*, https://qualityoilnc.com/qm-qp-gogas-locations/ (last visited May 20, 2025). Thirty of Defendants' stations are in North Carolina counties that border other states. *Id.* Nineteen of Defendants' stations are within 10 miles of popular tourist destinations, including Asheville, Grandfather Mountain, Tweetsie Railroad, the Blue Ridge Parkway, Mount Airy, Pinehurst, Wilmington, the Outer Banks, Southport, Wrightsville, Topsail, Surf City, Emerald Isle, and Morehead City. *Id.* And twenty-four of Defendants' stations are within 10 miles of a major airport, college or university, or military base. *Id.*

9. As such, at least one individual who purchased fuel from these stations during the class period was not a citizen of North Carolina. (*See* McIver Decl. ¶ 7, Ex. 2.)

10. Defendants are both limited liability companies. As such, their citizenship would ordinarily be governed by the citizenship of their members. *Cent. W. Va. Energy Co., Inc. v. Mountain State Carbon, LLC*, 636 F.3d 101, 103 (4th Cir. 2011) ("[T]he citizenship of a limited liability company … is determined by the citizenship of all its members ….”). But "in enacting § 1332(d)(10) as a part of CAFA in 2005, Congress … modif[ied] the rule for business entities other than corporations to provide, for purposes of CAFA, that the citizenship of all unincorporated associations is determined by the State under whose laws the unincorporated association is organized and the State where it has its principal place of business." *See Ferrell v. Express Check Advance of SC LLC*, 591 F.3d 698, 703–04 (4th Cir. 2010) (internal quotation and alteration marks omitted); *see also Bartels ex rel. Bartels v. Saber Healthcare Grp., LLC*, 880 F.3d 668, 673 n.2 (4th Cir. 2018) ("Under CAFA, unincorporated associations—including limited liability companies—are citizens of the state under whose laws they are organized and of the state where their principal place of business is located.").

11. Defendants are both organized under North Carolina law and have their principal places of business in North Carolina. Accordingly, both are citizens of North Carolina.

## **DIVERSITY JURISDICTION UNDER CAFA**

12. Pursuant to 28 U.S.C. § 1332, as amended by CAFA, federal district courts have original jurisdiction over putative class actions with 100 or more putative class

members, in which the aggregate amount in controversy exceeds $5,000,000, and any member of the putative class is a citizen of a state different from any defendant. Complete diversity among parties is not required. 28 U.S.C. § 1332(d)(2)(A). CAFA was intended to "expand substantially federal court jurisdiction over class actions. Its provisions should be read broadly, with a strong preference that interstate class actions be heard in federal court if properly removed." S. Rep. 109-14, at 43 (2005), *reprinted in* 2005 U.S.C.C.A.N. 3, 41; *see* H. Rep. 108-144, at 36–37 (2005).

13. ***Covered Class Action.*** This action meets CAFA's definition of a class action, which is "any civil action filed under rule 23 of the Federal Rules of Civil Procedure or similar State statute . . . authorizing an action to be brought by 1 or more representative persons as a class action." 28 U.S.C. § 1332(d)(1)(B). Plaintiffs expressly cite North Carolina Rule of Civil Procedure 23, which is analogous to Federal Rule of Civil Procedure 23. (*See, e.g.*, Compl. ¶ 100, Ex. 1.) Defendants, however, deny that this case should be certified as a class action and reserve their right to challenge that issue at the appropriate time.

14. ***Class Action Consisting of 100 or More Members.*** Plaintiffs allege that their proposed class "is composed of hundreds, if not thousands, of persons and/or entities …." (*Id.* at ¶ 104.) They also allege that the putative class includes everyone who purchased fuel from "130 gas stations geographically dispersed throughout North Carolina" over a more than four-year period. (*Id.* at ¶¶ 100, 104.) While Defendants expressly deny that certification is proper, if a class were certified under Plaintiffs' proposed definition, it would include more than 100 putative class members. (*See* McIver Decl. ¶ 5, Ex. 2.) Thus,

again without conceding certification is proper, CAFA's requirement that the putative class consist of at least 100 members is satisfied here. *See* 28 U.S.C. § 1332(d)(5)(B).

15. ***Citizenship of the Parties.*** The requisite minimal diversity of citizenship—which only requires any plaintiff be a citizen of a different state than any defendant—exists under 28 U.S.C. § 1332(d)(2). While the named Plaintiffs and Defendants are citizens of North Carolina, the putative class includes anyone who purchased allegedly non-conforming fuel from a station in North Carolina, regardless of their citizenship. Thus, at least one putative class member is a citizen of a state other than North Carolina. (*See supra* ¶¶ 6–9.)

16. ***Amount in Controversy.*** There is more than $5 million in controversy in this action. Under 28 U.S.C. § 1332(d), the amount in controversy in a putative class action is determined by aggregating the amount at issue of the claims of all members of the putative class. 28 U.S.C. § 1332(d)(6). While Defendants deny that Plaintiffs or any putative class members are entitled to recover any amount, the allegations in the Complaint and the relief sought place more than $5 million in controversy, excluding interest and costs.

17. When "the plaintiff's complaint does not state the amount in controversy, the defendant's notice of removal may do so." *Dart Cherokee Basin Operating Co. v. Owens*, 574 U.S. 81, 83 (2014) (citing 28 U.S.C. 1446(c)(2)(A)). To establish the amount in controversy sufficient to remove a putative class action to federal court, a defendant need not submit proof to establish the amount in dispute, but rather "may simply allege or assert that the jurisdictional threshold has been met." *Id*. at 89. Specifically, CAFA's amount in controversy requirement is satisfied where the proponent of federal jurisdiction provides a

good-faith estimate that plausibly explains how the stakes exceed $5 million. *See id.* ("a defendant's notice of removal need include only a plausible allegation that the amount in controversy exceeds the jurisdictional threshold."); *see also Scott v. Cricket Commc'ns, LLC*, 865 F.3d 189, 196 (4th Cir. 2017) (a CAFA notice of removal's estimation of the amount in controversy may rely "on reasonable estimates, inferences, and deductions."). The movant may also submit affidavits to aid the Court in making "an independent evaluation as to whether or not the jurisdictional amount is in issue." *Priselac v. Chemours Co.*, 561 F. Supp. 3d 562, 570 (E.D.N.C. 2021).

18. Here, although Defendants deny that Plaintiffs are entitled to recover any amount, the allegations in the Complaint clearly put more than $5 million in issue. For instance, pursuant to North Carolina's Unfair and Deceptive Trade Practices Act, Plaintiffs allege that they are entitled to a substantial monetary recovery because, for the last four years, the fuel Defendants sold members of the putative class from more than 130 North Carolina stations was non-conforming such that it was entirely worthless and could damage consumers' vehicles. (*See, e.g.*, Compl. ¶¶ 1, 88, 90, 100, 104, 109, 144, 163, Ex. 1.)

19. While Plaintiffs' Complaint suggests that not all the fuel Defendants transported and/or sold during the class period was non-conforming, (*see id.* at ¶ 3), it plainly suggests that a substantial amount was non-conforming. (*See, e.g.*, *id.* at ¶¶ 1, 16.)

20. In each of 2021, 2022, 2023, and 2024, Defendants' North Carolina Quality Mart, Quality Plus, and GoGas stations sold more than 200 million gallons of regular 87-octane gasoline in addition to other types of fuel. (*See* McIver Decl. ¶ 9, Ex. 2.)

21. Defendants' sales from regular 87-octane gasoline sold from its Quality Mart, Quality Plus, and GoGas stations during 2021, 2022, 2023, and 2024 alone exceeded CAFA's $5 million amount in controversy <u>many</u> times over. (*See id.* at ¶ 10.) Thus, without considering Defendants' sales of other fuel products, such as plus 89-octane gasoline, premium 93-octane gasoline, or diesel fuel, if it were determined that even a tiny fraction of the regular 87-octane gasoline Defendants sold during the class period was worthless, Defendants' potential liability could be well in excess of CAFA's amount in controversy requirement, exclusive of trebling pursuant to N.C. Gen. Stat. § 75-16 and any award of attorneys' fees pursuant to § 75-16.1. Again, Defendants deny <u>any</u> such liability.

22. Additionally, even the one station Plaintiffs specifically reference in their Complaint, Carbon City Quality Plus, standing alone, sold between approximately 1.9 million and 2.4 million gallons per year in 2021, 2022, 2023, and 2024, amounting to between $5.6 and $8.3 million in annual sales of regular 87-octane gasoline during the class period. (*See* McIver Decl. ¶ 12, Ex. 2.)

23. Given the size of Defendants' operations and the breadth of Plaintiffs', albeit general, allegations, the amount that Plaintiffs have placed at issue clearly exceeds $5 million.

24. Further, even setting this data aside, the allegations in Plaintiffs' Complaint are sufficient to demonstrate CAFA's amount in controversy requirement is met.

25. For instance, while Plaintiffs' Complaint is largely devoid of specifics, they do allege that on November 28, 2023, Defendants filled up the underground tanks at Carbon City Quality Plus with 1,000 gallons of non-conforming fuel, which rendered all

the fuel in the station's tanks non-conforming and, thereby, allegedly worthless. (*Id.* at ¶¶ 67, 71–74.)

26. The regular 87-octane gasoline tank at the Carbon City Quality Plus holds 20,000 gallons of fuel, all of which Plaintiffs allege Defendants rendered non-conforming before selling to consumers. (*Id.* at ¶ 74); (*see also* McIver Decl. ¶ 13, Ex. 2.)

27. According to the U.S. Energy Information Administration, the average price per gallon of gas sold in PADD 1C, which includes North Carolina[1] during November of 2023 was $3.03. USEIA, *Petroleum & Other Liquids: Data*, https://www.eia.gov/dnav/pet/hist/LeafHandler.ashx?n=PET&s=EMM_EPMR_PTE_R1Z_DPG&f=W (last visited May 20, 2025).

28. By multiplying 20,000 (the number of allegedly worthless gallons sold) by $3.03 (the average price per gallon at the time of the delivery), Plaintiffs' allegations, if proven true, suggest that Defendants could potentially be liable for $60,600 in damages, which could then be trebled to $181,800, pursuant to N.C. Gen. Stat. § 75-16, and increased by attorneys' fees pursuant to § 75-16.1.

29. Plaintiffs also allege that members of the putative class bought non-conforming "fuel **<u>from at least 130 gas stations</u>** geographically dispersed throughout North Carolina." (Compl. ¶ 104, Ex. 1) (emphasis added). Thus, Plaintiffs' allegations

[1] The Lower Atlantic region includes West Virginia, Virginia, North Carolina, South Carolina, Georgia, and Florida.

plainly suggest that Defendants shipped at least 130 loads of non-conforming fuel (one load per station that allegedly sold non-conforming fuel).

30. Even if Plaintiffs' allegations could only be read to suggest that one load of non-conforming fuel was shipped to 130 of Defendants' North Carolina stations, these 130 alleged shipments would have rendered approximately 2.6 million gallons of fuel in Defendants' stations' underground tanks non-conforming during the class period.[2]

31. According to the U.S. Energy Information Administration, the average price per gallon of gas sold in PADD 1C during Plaintiffs' proposed class period was $3.25. USEIA, *Petroleum & Other Liquids: Data*, https://www.eia.gov/dnav/pet/hist/LeafHandler.ashx?n=PET&s=EMM_EPMR_PTE_R1Z_DPG&f=W (last visited May 20, 2025).

32. By multiplying 2.6 million (the number of allegedly worthless gallons sold) by $3.25 (the average price per gallon during the proposed class period), Plaintiffs' allegations, if proven true, suggest that Defendants could potentially be liable for $8,450,000 in damages, which could be trebled to $25,350,000, and further increased by an award of attorneys' fees.[3]

---

[2] 130 (number of alleged stations) multiplied by 20,000 (the number of gallons contaminated in each station's underground tanks by a single delivery) = 2.6 million.

[3] Plaintiffs also allege that Defendants' non-conforming fuel can damage consumers' vehicles and that there are more than 7.7 million gas-powered cars registered in North Carolina. (*See, e.g.*, *supra* ¶ 18); (Compl. ¶ 25, Ex. 1.) If Plaintiffs were able to prove that Defendants' fuel damaged even a tiny fraction of these vehicles, this alone could satisfy CAFA's amount in controversy exception as, in December of 2022, "[t]he average one-to-five-year-old car cost an average of $33,582" in North Carolina. *See This is the Average Price of a Used Car in North Carolina*, FOX 8 (Feb. 11, 2023), https://myfox8.com/news/this-is-the-average-price-of-a-used-car-in-each-state-4/.

33. In sum, because Plaintiffs and the putative class seek significant actual damages, treble damages, and statutory attorneys' fees, it is clear from the "the breadth of the damages sought and size of the putative class" that the amount in controversy is more than the $5 million threshold under CAFA. *See* 28 U.S.C. § 1332(d)(2); *Priselac*, 561 F. Supp. 3d at 570.

34. For all these reasons, CAFA's jurisdictional requirements are met. The putative class includes more than 100 members, at least one member of the putative class is diverse from Defendants, and the amount in controversy exceeds $5 million.

**PROCEDURAL REQUIREMENTS**

35. ***Removal is Timely.*** This Notice of Removal has been timely filed within thirty days of service of the Complaint by Plaintiffs on April 30, 2025, pursuant to 28 U.S.C. § 1446(b). Based on the official State Court Action file, no other defendants have been named, served with process, or entered an appearance in this case.

36. ***Removal to Proper Court.*** The North Carolina General Court of Justice, Superior Court Division, Forsyth County, is located within the Middle District of North Carolina. 28 U.S.C. § 93(b). This Notice of Removal is therefore properly filed in this Court, pursuant to 28 U.S.C. § 1441(a).

37. ***Pleadings and Process.*** Attached hereto as Exhibit 1 is a copy of all process, pleadings, and orders received in the State Court Action. 28 U.S.C. § 1446(a).

38. ***Notice.*** Contemporaneous with the filing of this Notice of Removal, written notice of this filing was delivered to all parties who have appeared in this action, through their counsel of record, and a copy of this Notice will be timely filed with the clerk of the

state court in which the action is pending, pursuant to 28 U.S.C. § 1446(d). (*See* Notice to State Court of Removal, Ex. 3.)

39. ***Signature.*** This Notice of Removal is signed pursuant to Fed. R. Civ. P. 11, as required by 28 U.S.C. § 1446(a).

40. ***Bond and Verification.*** Pursuant to Section 1016 of the Judicial Improvements and Access to Justice Act of 1988, no bond is required in connection with this Notice of Removal. Pursuant to Section 1016 of the Act, this Notice need not be verified.

41. ***Non-waiver of Defenses.*** By filing this Notice of Removal, Defendants do not waive any defenses available to them. Nor do Defendants admit any of the allegations in the Complaint. Rather, Defendants expressly reserve their right to contest those allegations at the appropriate time.

42. Based upon the foregoing, this Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1332, as amended by CAFA, and 28 U.S.C. § 1367. Thus, this action may be removed to this Court under 28 U.S.C. §§ 1441, 1446 and 1453.

## CAFA EXCEPTIONS

43. While certain exceptions to the Court's exercise of jurisdiction pursuant to CAFA exist where more than one-third or more than two-thirds of the putative class members are citizens of the state where the action was initially filed, it is Plaintiffs' burden to establish by the preponderance of the evidence that an exception applies. *See Dominion Energy, Inc. v. City of Warren Police & Fire Ret. Sys.*, 928 F.3d 325, 335-36 (4th Cir. 2019) ("Under CAFA, the removing party bears the burden of establishing federal

jurisdiction over a class action, but the party seeking remand has the burden of proving that one of CAFA's three exceptions to removal applies."); *Fernandes v. D.R. Horton, Inc.*, __ F. Supp. __, 2025 WL 1008079, at *3 (D.S.C. 2025) ("A plaintiff seeking remand under a CAFA exception bears the burden of establishing each prong of the exception by a preponderance of the evidence.").

44. To establish either of CAFA's citizenship-based exceptions apply, Plaintiffs must produce evidence of the putative class members' residencies, as well as evidence demonstrating their intent to remain in that state. *See Russo v. Eastwood Constr. Partners, LLC*, No. 2:22-cv-1686-DCN, 2023 WL 2386453, at *11 (D.S.C. Mar. 7, 2023) ("In cases where plaintiffs do not base citizenship on the class definition, they must provide evidence of the class members' state of residence as well as evidence showing their intent to remain in that state.") (citing *Scott*, 865 F.3d at 195).

45. Given that so many of the 133 Quality Mart, Quality Plus, and GoGas fuel stations Defendants operate and supply in North Carolina are near interstate highways, tourist destinations, major metros, the state border, airports, colleges and universities, and/or military bases, (*see supra* ¶¶ 7–9), Defendants do not believe Plaintiffs can meet their burden of demonstrating that any of CAFA's exceptions apply.

46. This notwithstanding, if Plaintiffs attempt to remand this case, or the Court considers remand *sua sponte*, Defendants respectfully request the opportunity to submit additional briefing, argument, or evidence in support of removal.

## CONCLUSION

Defendants respectfully remove this action to the United States District Court for the Middle District of North Carolina and for such other and further relief to which they may be entitled.

Respectfully submitted this the 29th day of May 2025.

*/s/ Stephen R. Berlin*
**Stephen R. Berlin**
NC Bar No. 12317
**Jason M. Wenker**
NC Bar No. 36076
**Tanner A. Henson**
NC Bar No. 60925
KILPATRICK TOWNSEND & STOCKTON LLP
1001 West Fourth Street
Winston-Salem, North Carolina 27101
Telephone: (336) 607-7300
Facsimile: (336) 607-7500
Email: sberlin@ktslaw.com
Email: jwenker@ktslaw.com
Email: thenson@ktslaw.com

**D. Richard Self**
NC Bar. No. 60087
KILPATRICK TOWNSEND & STOCKTON LLP
4208 Six Forks Road, Suite 1400
Raleigh, North Carolina 27609
Telephone: (919) 420-1700
Facsimile: (919) 510-6199
Email: rself@ktslaw.com

*Attorneys for Defendants Quality Oil Company, LLC and Reliable Tank Line, LLC*

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that on this date I electronically filed the foregoing Notice of Removal with the Clerk of Court using the CM/ECF system and caused the document to be served upon Plaintiffs' counsel by email and by depositing a copy in the United States mail, postage prepaid and addressed as follows:

**Matthew E. Lee**
**Jeremy R. Williams**
**Eric G. Steber**
MILBERG COLEMAN BRYSON PHILLIPS GROSSMAN, PLLC
900 W. Morgan St.
Raleigh, NC 27603
mlee@milberg.com
jwilliams@milberg.com
esteber@milberg.com

**Edward H. Maginnis**
**Karl S. Gwaltney**
MAGINNIS HOWARD
7706 Six Forks Rd., Suite 101
Raleigh, NC 27615
emaginnis@carolinalaw.com
kgwaltney@carolinalaw.com

This the 29th day of May 2025.

*/s/ Stephen R. Berlin*
**Stephen R. Berlin**
NC Bar No. 12317
**Jason M. Wenker**
NC Bar No. 36076
**Tanner A. Henson**
NC Bar No. 60925
KILPATRICK TOWNSEND & STOCKTON LLP
1001 West Fourth Street
Winston-Salem, North Carolina 27101
Telephone: (336) 607-7300
Facsimile: (336) 607-7500

Email: sberlin@ktslaw.com
Email: jwenker@ktslaw.com
Email: thenson@ktslaw.com

**D. Richard Self**
NC Bar No. 60087
KILPATRICK TOWNSEND & STOCKTON LLP
4208 Six Forks Road, Suite 1400
Raleigh, North Carolina 27609
Telephone: (919) 420-1700
Facsimile: (919) 510-6199
Email: rself@ktslaw.com

*Attorneys for Defendants Quality Oil Company, LLC and Reliable Tank Line, LLC*